UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | |
|---|---|
| UNUM LIFE INSURANCE COMPANY OF AMERICA,<br><br>Plaintiff,<br><br>V.<br><br>JOHN D. MILLER,<br><br>Defendant. | Civil Action No. 2: 11-129-DCR<br><br>**MEMORANDUM OPINION AND ORDER** |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is pending for consideration of Plaintiff Unum Life Insurance Company of America's ("Unum") motion for summary judgment. [Record No. 17] Unum asserts that it is entitled to recover overpaid disability benefits from Defendant John D. Miller. Additionally, Unum seeks summary judgment with regard to Miller's counterclaim for negligence and breach of contract. Miller argues that he is not required to reimburse Unum because its failure to reduce his disability payments caused the overpayment. Further, he contends that a material factual issue remains regarding his counterclaim. For the reasons discussed below, Unum's motion will be granted.

**I.     Background**

This case arises from Miller's claim for disability benefits. Miller, as an employee of FKI Logistex, was a participant in a group disability insurance policy ("Policy") issued by Unum. [Record No. 1 ¶ 5] The Policy constitutes an employee welfare benefit plan under the Employee

-1-

Retirement Income Security Act ("ERISA"). [*Id.* ¶ 6] Miller became disabled on August 27, 2005. [Record No. 17-2, p. 1] He submitted a claim for disability benefits under the Policy and the claim was approved. [*Id.*] Pursuant to the Policy, Unum made began making payments on June 16, 2007.[1] [*Id.*]

Miller also applied for Social Security benefits. In May 2007, Miller submitted to Unum a "benefit payment option/reimbursement form" regarding his pending Social Security claim. On the form, Miller requested that Unum "estimate the amount of deductible benefits [he] . . . will receive from other sources . . . and reduce [his] disability benefit by this amount." [Record No. 18-1, p. 1] Unum continued to make full payments, however, because Miller had "submitted documentation [indicating that] he had filed for Social Security Benefits and was denied."[2] [Record No. 17-2, p. 2]

The Social Security Administration ("SSA") awarded Miller benefits on March 28, 2009. [Record No. 17-5] It found that Miller was entitled to retroactive benefits beginning in February 2006, amounting to $64,440.40. [*Id.*, p. 7] After subtracting $15,723.65 for payment of Miller's legal expenses, the SSA distributed a lump sum of $48,716.75 to Miller as payment for his retroactive benefits in March 2009. [*Id.*] In May 2009, Miller received an additional $10,327.25 — the difference between the final retroactive benefit payment and the attorney fee. [Record No. 17-6, p. 1]

---

[1]   The June 16, 2007 payment was for the period from February 23, 2006 to May 22, 2007. [Record No. 17-2, p. 2] All subsequent benefit payments have been monthly distributions.

[2]   Unum, therefore, continued to make full disability payments "[b]ecause there was a continuing issue at that time regarding approval of Miller's [Social Security] award." [Record No. 17, p. 2]

On July 10, 2009, after receiving documentation of the Social Security disability award, Unum notified Miller that he had been overpaid by $63,888.04. [Record No. 17-2, p. 2; *see* Record No. 17-7, p. 1] Miller appealed the assessment of the overpayment but the appeal was denied on February 19, 2010. [Record No. 17-2, p. 2] Unum has "reduced the overpayment amount to $53,111.68" by withholding benefits, but Miller has refused to refund the bulk of the overpaid sums. [Record No. 1 ¶¶ 11-12] Unum filed this action on June 29, 2011, to recover the remaining overpayment. It seeks equitable restitution in the amount of $53,111.68, as well as pre-judgment and post-judgment interest, attorneys' fees, reasonable expenses, and costs. [*Id.*, p. 3] Miller asserts a counterclaim for breach of contract and negligence, seeking an award of his back due disability pay. [Record No. 6, p. 3]

**II.  Standard of Review**

Summary judgment is appropriate when a party demonstrates there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986); *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

The party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir.

2008). Once the moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). Additionally, the nonmoving party cannot rely upon the assertions in its pleadings; rather, that party must come forward with probative evidence, such as sworn affidavits, to support its claims. *Celotex*, 477 U.S. at 324. In determining whether summary judgment is appropriate, the Court must review all the facts and the inferences drawn from those facts in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

### III.    Legal Analysis

Unum contends that it is entitled to summary judgment on its claim for equitable restitution under 29 U.S.C. § 1132(a)(3)(B) because Miller has "wrongfully retained benefits paid to him under the Policy." [Record No. 1 ¶ 14] Miller argues that ERISA does not authorize Unum's claim. He asserts that for a fiduciary to recover under § 1132(a)(3)(B), it must seek a "specific fund, distinct from the insured's general assets." [Record No. 18, p. 5] Because he has already spent the benefits he received from Unum and from the SSA, Miller contends that "[n]o separate funds or accounts exist." [*Id.*, p. 3] Therefore, he asserts, Unum is not entitled to recover the overpayments.

Unum also seeks summary judgment on Miller's counterclaim for breach of contract. With respect to this claim, Miller contends that the parties "entered into an agreement whereby [Unum] was to calculate the appropriate offset to [Miller's] disability payments . . . in

anticipation of [Miller] receiving Social Security Disability payments." [Record No. 6, p. 2] He maintains that Unum's "negligent actions" in failing to reduce his disability payments resulted in the overpayment. [*Id.*, p. 3] Unum argues that this claim is unavailing because it "has a fiduciary responsibility to recover the overpayment of disability benefits regardless of how the overpayment occurred." [Record No. 17, p. 5] Moreover, it asserts that the counterclaim fails because "Miller knew he was receiving unreduced disability payments at least as early as November 2007." [Record No. 19, p. 3] Therefore, Unum contends, its claim is not barred by "the doctrines of equitable and/or promissory estoppel" because Miller could not have reasonably relied on the alleged agreement. [Record No. 6, p. 2]

### A. Specifically Identifiable Fund

Unum brings this claim under the civil enforcement section of ERISA, which provides that the fiduciary of an employee welfare benefit plan may bring a civil action: "(A) to enjoin any act or practice which violates any provision of the subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3); *see* 29 U.S.C. § 1002(21)(A) (defining "fiduciary"). It is clear that "to invoke the authority to sue under § 1132(a)(3)(B), a fiduciary must be seeking a category of relief that would have typically been available in equity and not simply an award of compensatory damages." *Gilchrest v. Unum Life Ins. Co. of Am.*, 255 F. App'x 38, 44 (6th Cir. 2007).

Unum alleges that, pursuant to the terms of the Policy, "Miller is not, nor was he ever, entitled to retain sums by which he has been overpaid." [Record No. 1 ¶ 15] Thus, it seeks

equitable restitution of those overpayments. Miller does not argue that Unum seeks a form of relief that was not "typically available in equity." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993). Instead, he contends that Unum has failed to trace its overpayments to "particular funds in [his] possession." [Record No. 18, p. 4] Miller cites *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), for the proposition that "[r]estitution in equity can be sought where the money identified as arguably belonging to the Plaintiff can be clearly traced to particular funds in the possession of the debtor." [Record No. 18, p. 4] In doing so, however, Miller mischaracterizes *Knudson* and ignores subsequent caselaw interpreting § 1132(a)(3)(B).

The plaintiff in *Knudson* was injured in a car accident, causing the plan fiduciary to pay over $400,000.00 in medical expenses on her behalf. 534 U.S. at 207. After Knudson received a large settlement from her personal injury lawsuit, the fiduciary filed an action seeking reimbursement for the medical payments from the proceeds of the settlement.[3] *Id.* The Court considered the nature of the relief sought by the fiduciary and determined that the claim was not that the Knudsons held "particular funds that, in good conscience, belong[ed] to [the plan fiduciary], but that [the fiduciary was] contractually entitled to *some* funds for the benefits that [it] conferred." *Id.* at 214; *see id.* at 210 (finding that fiduciary sought, "in essence, to impose personal liability on [Knudson] for a contractual obligation to pay money — relief that was not typically available in equity"). Moreover, because the settlement disbursement was paid to a Special Needs Trust to provide for Knudson's medical care, "the funds to which [the fiduciary]

---

3   In *Knudson*, as here, the plan included language providing that it had "the right to recover from the [beneficiary] any payment for benefits paid by the Plan that the beneficiary is entitled to recover from a third party." 534 U.S. at 207 (internal quotation marks omitted).

claim[s] an entitlement under the Plan's reimbursement provision — the proceeds from the settlement of [Knudson's] tort action — [were] not in [her] possession." *Id.* at 214. The Court concluded that the "kind of restitution that [the fiduciary] seek[s] . . . is not equitable"; therefore, the Court held, the fiduciary did not have the authority to sue under § 1132(a)(3)(B). *Id.*

After *Knudson*, a split of authority emerged. In *Qualchoice, Inc. v. Rowland*, 367 F.3d 638 (6th Cir. 2004), the Sixth Circuit held that "a plan fiduciary's action to enforce a plan-reimbursement provision is a legal action, regardless of whether the plan participant or beneficiary recovered from another entity and possesses that recovery in an identifiable fund." *Id.* at 650; *see also Westaff (USA) Inc. v. Arce*, 298 F.3d 1164 (9th Cir. 2002). Other circuits construed *Knudson* more narrowly, applying a three-part test to determine whether the relief sought was equitable or legal. These courts ask whether the plan fiduciary seeks to recover funds "(1) that are specifically identifiable, (2) that belong in good conscience to the Plan, and (3) that are within the possession and control of the defendant beneficiary." *Bombardier Aerospace Emp. Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough*, 354 F.3d 348, 356 (5th Cir. 2003); *see also Admin. Comm. of the Wal-Mart Assocs. Health & Welfare Plan v. Willard*, 393 F.3d 1119 (10th Cir. 2004); *Admin. Comm. of Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan v. Varco*, 338 F.3d 680 (7th Cir. 2003).

The Supreme Court addressed this split in *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006), and abrogated the holding in *Qualchoice*. *Id.* at 361. The *Sereboff* Court — which considered a plan fiduciary's claim for reimbursement for the medical bills paid on the plan participants' behalf — clarified the *Knudson* holding. The Court explained that, as long as

the plan fiduciary seeks "its recovery through a constructive trust or equitable lien on a specifically identified fund, not from the [beneficiaries'] assets generally," the claim is equitable in nature. *Id.* at 363. Applying that principle, the Court found that the "specifically identified fund" was the "recover[y] from a third party (whether by lawsuit, settlement or otherwise)" and that the "particular share of that fund to which Mid Atlantic was entitled" was the "portion of the total recovery which is due . . . for benefits paid." *Id.* at 364.

The Sixth Circuit addressed the impact of *Sereboff* in *Gilchrest*, explaining that, under that decision, "strict tracing of funds is not required." *Gilchrest*, 255 F. App'x at 45. "What is required, however, is that the agreement specifically identify a particular fund — distinct from the defendant's general assets — and a particular share of that fund to which the plan was entitled." *Id.* The *Gilchrest* court considered the fiduciary's claim for reimbursement of overpayments due to the beneficiary's receipt of Social Security benefits. It found that

> the Plan's overpayment provision asserts a right to recover from a specific fund distinct from Gilchrest's general assets — the fund being the overpayments themselves — and a particular share of that fund to which the plan was entitled — all overpayments due to the receipt of Social Security benefits, but not to exceed the amount of benefits paid.

*Id.* at 45-46.

The Sixth Circuit affirmed *Gilchrest* in *Hall v. Liberty Life Assurance Co. of Boston*, 595 F.3d 270 (6th Cir. 2010), again upholding a district court's determination that the employee welfare benefits plan at issue was entitled to reimbursement for "overpayments made due to [the beneficiary's] retroactive receipt of Social Security benefits." *Id.* at 274. The court found that a district court may place an equitable lien on "a specifically identifiable fund (the overpayments

themselves) within [the beneficiary's] general assets, with the Plan entitled to a particular share (all overpayments due to her receipt of Social Security benefits, not to exceed the amount of benefits paid)."[4] *Id.* at 275. This is consistent with decisions from other circuits interpreting *Knudson* and *Sereboff*. For example, the Eighth Circuit in *Dillard's Inc. v. Liberty Life Assurance Co. of Boston*, 456 F.3d 894 (8th Cir. 2006), affirmed the district court's order awarding the plan fiduciary reimbursement for amounts paid to the beneficiary from the Social Security Administration, because the "complaint states that it is a request for equitable relief, and [the fiduciary] seeks a particular share of a specifically identified fund — all overpayments resulting from the payment of social security benefits." *Id.* at 901; *see also Popowski v. Parrott*, 461 F.3d 1367, 1374-74 (11th Cir. 2006) (finding that where the plan specified the fund from which the reimbursement must be paid, the fiduciary may state a claim for equitable relief under § 1132(a)(3)(B)).

Here, the relevant Policy provisions are almost identical to those considered by the Court in *Gilchrest*. The Policy provides that "Unum has the right to recover any overpayments due to: . . . your receipt of deductible sources of income." [Record No. 17-1, p. 7] The term "deductible sources of income" is defined to include any amount that the claimant is "entitled to receive as disability payments because of [his] disability under . . . the United States Social Security Act." [*Id.*, p. 18] The Court finds *Gilchrest* to be controlling. Unum seeks to recover from a specific

---

4    A court may not, however, "place a lien directly on the Social Security benefits themselves" because doing so violates the Social Security statute. *Hall*, 595 F.3d at 275 (citing 42 U.S.C. § 407(a)).

fund: the overpayments it made as a result of Miller's award of Social Security benefits. It is thus entitled to bring this action under 29 U.S.C. § 1132(a)(3)(B).[5]

Miller argues that Unum's action is barred by equitable estoppel because of the Disability Payment Option/Reimbursement Agreement form ("Reimbursement Agreement") that he filled out and signed.[6] The Reimbursement Agreement form offers two options to a beneficiary seeking Social Security benefits: (A) "Issue Benefit with No Reduction"; and (B) "Estimate & Reduce Benefit."[7] [Record No. 18-1] Miller chose Option B, signed the form, and submitted it to Unum. [*Id.*] As a result of this selection, he argues that he "relied upon the written representations and contractual obligations of UNUM to properly calculate whether any reduction of benefits was necessary and to pay him the appropriate reduced benefit to avoid an overpayment situation." [Record No. 18, p. 3] Therefore, according to Miller, he should not be "obligated to pay back any alleged overpayment due to [Unum's] actions." [Record No. 6, p. 3] He asserts that his reliance is an issue of fact that cannot be resolved *via* summary judgment.

---

5    Miller indicates that he "has utilized all funds received from UNUM and Social Security Disability for payment of necessary living expenses." [*Id.*, p. 3] Yet it is not "necessary for a plaintiff to trace property or an asset rightfully belonging to that plaintiff into its products or substitutes in the defendant's hands" in the case of a lien by agreement. *Popowski*, 461 F.3d at 1374 n.8 (internal quotation marks omitted); *see also Sereboff*, 547 U.S. at 365 ("[N]o tracing requirement . . . applies to equitable liens by agreement or assignment."). Therefore, Miller's "averment that the overpayments had been dissipated would seem to be of no avail." *Gilchrest*, 255 F. App'x at 45.

6    In *Gilchrest*, the beneficiary also "alerted Unum when his disability payments were not reduced by the amount of Social Security benefits he was receiving, but the overpayments continued." *Gilchrest*, 255 F. App'x at 39-40. Despite this, the court upheld the district court's grant of summary judgment awarding restitution.

7    Option B allows the beneficiary to request that Unum "estimate the amount of deductible benefits [he] . . . will receive from other sources, as described in [the] policy, and reduce [his] disability benefits by this amount." [Record No. 18-1]

-10-

The Court finds that there is no material issues of fact in dispute regarding Miller's alleged reliance on the representations in the Reimbursement Agreement. Unum does not represent that it is contractually bound to reduce the beneficiary's payments if he selects Option B. [*See* Record No. 18-1 (providing that "*[i]f* other sources of benefits are estimated, the disability benefit will be adjusted when the insurer receives proof of the amount awarded" (emphasis added))] Moreover, as Unum points out, Miller's "benefit payments from Unum never decreased at any point," and he "does not dispute that he received notice at least as early as November 2007 that his payments were not being reduced despite his request for reduction of benefits in May 2007." [Record No. 19, p. 3] Therefore, Miller had notice that his payments from Unum had not been adjusted well before his first lump sum payment from the Social Security Administration in the spring of 2009. [*See* Record No. 17-5] In summary, Miller's assertion that there is a genuine issue of material fact regarding his "reasonable reliance" on Unum's compliance with his selection of Option B on the Reimbursement Agreement form is misplaced.

### B. Miller's Counterclaim

Summary judgment on Miller's counterclaim is also appropriate because ERISA preempts his state law claims for breach of contract and negligence. ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). A state law may "relate to" a plan even if "the effect is only indirect." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990). Because the wording of the preemption clause is "unhelpful," courts interpreting the clause are encouraged to consider the

"objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995). "The purpose of ERISA preemption was to avoid conflicting federal and state regulation and to create a nationally uniform administration of employee benefit plans." *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 698 (6th Cir. 2005). Thus, ERISA preempts state laws that "provide 'alternate enforcement mechanisms'" or "'bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself.'" *Id.* (quoting *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1468 (4th Cir. 1996)).

In this case, Miller's claims for breach of contract and negligence relate to the employee welfare benefit plan. The Policy explicitly references the Reimbursement Agreement form when it indicates that a beneficiary's disability payment will not be reduced by an estimated amount of deductible income benefits if he "sign[s] Unum's payment option form." [Record No. 17-1, p. 20] The Policy explains that the form "states that [the beneficiary] promise[s] to pay [Unum] any overpayment caused by an award." [*Id.*] Thus, the Reimbursement Agreement is a part of the Policy. *See Fortelney v. Liberty Life Assurance Co. of Boston*, 790 F. Supp. 2d 1322, 1350 (W.D. Okla. 2011) (finding that because "reimbursement agreements are specifically referenced" in the plan's policy, those agreements "are a part of the . . . policy and its administration"). ERISA preemption applies where a beneficiary "seek[s] to have [his] plan administered . . . in a way that is different from what the plan documents expressly require, based upon alleged breaches of legal duties created and imposed by state law." *Cataldo v. U.S. Steel Corp.*, 676

F.3d 542, 557 (6th Cir. 2012). The fact that analyzing claims for negligence and breach of contract would require "the court to consider the plan documents to determine whether there had been any breaches of these state-law duties[ is] a further indication that ERISA preempts these claims." *Id.* Miller's contract claim is preempted by ERISA, as is his negligence claim.

In addition to finding that the are claims preempted, the Court can identify no genuine issue of material fact that would allow these claims to proceed. The Reimbursement Agreement form provides: "By selecting Option A, I understand that the Insurer has agreed to pay me an unreduced benefit based upon my written promise herein to pay the Insurer any overpayment resulting from my receipt of benefits from other sources, as outlined in my policy. I agree to reimburse the Insurer any such overpayment within thirty (30) days of my receipt of such funds." [Record No. 18-1] Miller seemingly contends that this language provides that selecting Option B relieves the beneficiary from the obligation to reimburse any overpayment resulting from the receipt of deductible benefits. [*See* Record No. 18, p. 2 ("The Agreement provides for Miller to reimburse UNUM . . . only when Option "A" is selected and UNUM is directed by the insured to make no reduction of benefits.")]  Yet, the form does not purport to supersede the language of the Policy, which very clearly provides that the beneficiary "must reimburse [Unum] in full" if it makes overpayments due to the receipt of "deductible sources of income." [Record No. 17-1, p. 7]

Using Miller's logic, had Unum reduced his payments according to the Reimbursement Agreement, he would have been entitled to keep any overpayment that resulted from Unum's miscalculation of his estimated benefits. [*See* Record No. 6, p. 2 ("The Plaintiff breached its

contractual obligations in failing to . . . properly calculate the appropriate offset to the detriment of the Defendant.")] However, the Policy unambiguously provides that "Unum has the right to recover any overpayments," even if the overpayments result from an "error Unum makes in processing a claim." [Record No. 17-1, p. 1]

Pursuant to the terms of the Policy, the overpayments sought by Unum were never rightfully Miller's property. [Record No. 17-1, p. 7] Miller's argument that negligence on the part of Unum could make them such is unpersuasive. Therefore, Miller has no entitlement to the overpayment. For these reasons, and for the reasons articulated in the Court's discussion of Miller's affirmative defense of equitable estoppel, Miller's counterclaim is unavailing.

### IV. Attorney's Fees and Judgment Interest

Although not the focus of its motion, Unum also seeks attorneys' fees, reasonable expenses, and costs in its Complaint. [Record No. 1, p. 3] ERISA provides that, in any action brought under § 1132, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Court may award fees and costs "as long as the fee claimant has achieved 'some degree of success on the merits.'" *Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149, 2152 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983). Although Unum has achieved success on the merits of this action, the Court's inquiry does not stop there. The Sixth Circuit has articulated a five-factor test to guide the district court's exercise of discretion in awarding fees:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and

>  beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 529 (6th Cir. 2008).

The second factor weighs heavily against a grant of attorney's fees in this case. According to Miller, he "does not have the financial means to reimburse UNUM and reimbursement of any amount would create a financial hardship." [Record No. 18, p. 3] While this representation does not excuse Miller from paying back funds that are not rightfully his, it does suggest that an award of attorney's fees to Unum would not be appropriate. Further, no other factor weighs significantly in favor of awarding fees to Unum. Miller has not exhibited bad faith, nor would an award have a significant deterrent effect on any future beneficiary who fails to reimburse an overpayment by his plan fiduciary. Moreover, Unum does not seek a "common benefit," nor has it raised any significant legal questions concerning ERISA. *Id.* Therefore, the Court will deny Unum's request for attorneys' fees, reasonable expenses, and costs.

Unum also seeks prejudgment interest. In an ERISA case, "prejudgment interest may be awarded in the discretion of the district court." *Tiemeyer v. Cmty. Mut. Ins. Co.*, 8 F.3d 1094, 1102 (6th Cir. 1993) (finding that district court abused its discretion by denying prejudgment interest "without explanation"). "Awards of prejudgment interest are compensatory, not punitive, and a finding of wrongdoing by the defendant is not a prerequisite to such an award." *Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 253 (6th Cir. 1992). Instead, the Court must consider any request for prejudgment interest "in accordance with general equitable principles."

*Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 585 (6th Cir. 2002). Thus, for the reasons explained above, the Court finds that prejudgment interest is not appropriate.

The Court, however, is required to award postjudgment interest. 28 U.S.C. § 1961. Postjudgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Therefore, the post-judgment interest rate will be 0.17%. *See* U.S. Fed. Reserve, Statistical Release (July 23, 2012).

**V.     Conclusion**

Unum has met its burden under Rule 56 of the Federal Rules of Civil Procedure. The Court concludes that it is entitled to recover overpayments as a matter of law. Accordingly, it is hereby

**ORDERED** as follows:

1.     Unum's Motion for Summary Judgment [Record No. 17] is **GRANTED**.

2.     A separate judgment entered this date.

This 30th day of July, 2012.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge